E-FILED
Tuesday, 17 September, 2019  04:05:24 PM
Clerk, U.S. District Court, ILCD


FILED

AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the
Central District of Illinois

SEP 17 2019

CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

INFORMATION ASSOCIATED WITH FACEBOOK
USER ID 548243122 THAT IS STORED AT PREMISES
CONTROLLED BY FACEBOOK INC.

Case No. 19-MJ- 7194

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A, attached hereto and incorporated by reference.

located in the ____Northern____ District of ____California____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, attached hereto and incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1343 | Wire Fraud |
| 18 U.S.C. § 1341 | Mail Fraud |
| 18 U.S.C. § 7201 | Tax Evasion |

The application is based on these facts:
SEE ATTACHED AFFIDAVIT OF IRS SPECIAL AGENT JAMES PEACOCK

☑ Continued on the attached sheet.

☑ Delayed notice of __30__ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

s/JAMES PEACOCK

*Applicant's signature*

JAMES PEACOCK, IRS SPECIAL AGENT
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
____telephone and electronic mail____ *(specify reliable electronic means).*

Date: 8/17/2019

s/ERIC I. LONG

*Judge's signature*

City and state: Urbana, Illinois

ERIC I. LONG, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK USER ID **548243122** THAT IS STORED AT PREMISES CONTROLLED BY FACEBOOK INC. | Case No. 19-7194<br><br>**Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Special Agent James Peacock, being first duly sworn, hereby depose and state

as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for

information associated with a certain Facebook user ID that is stored at premises

owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social

networking company headquartered in Menlo Park, California.  The information to be

searched is described in the following paragraphs and in Attachment A.  This affidavit

is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a),

2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government

records and other information in its possession, pertaining to the subscriber or customer

associated with the User ID listed in this order.

2.      Affiant, James Peacock, is employed as a Special Agent (S/A) with the

Criminal Investigation Division (CID) of the Internal Revenue Service (IRS) and has

been so since April, 2004.  During this time, Affiant has conducted and assisted

with multiple criminal investigations of violations of Internal Revenue laws and Title 18

offenses.  Affiant is a graduate of the Federal Law Enforcement Training Center in

Glynco, Georgia, where he received classroom, as well as practical training in criminal

tax violations and other violations of criminal statutes.  Affiant graduated from Illinois

State University with a Bachelor's degree in Accounting in April 1996 and has

successfully passed the CPA exam.

3.      The facts in this affidavit come from my personal observations, my

training and experience, and information obtained from other agents and witnesses.

This affidavit is intended to show merely that there is probable cause for the requested

warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this

affidavit, there is probable cause to believe that Wire Fraud, in violation of 18

U.S.C. § 1343, Mail Fraud, in violation of 18 U.S.C. § 1341, and Tax Evasion, in violation

of 18 U.S.C. § 7201 have been committed by Joan Leslie Chenoweth.  There is also

probable cause to search the information described in Attachment A for evidence of this

crime, as described in Attachment B.

## PROBABLE CAUSE

5.      On January 25, 2018, David York filed a complaint and report to the

Champaign Police Department (C18-00645).  York is the owner of Illini Contractor

Supply (ICS), a business located at 706 W. Bradley Avenue, Champaign, Illinois.  Joan

Leslie Chenoweth was formerly employed by York at ICS as his Office Manager.

Chenoweth was employed in this position from November, 2000, through January 26,

2

2018. Chenoweth's duties as Office Manager primarily involved bookkeeping for ICS.
York filed this police report after discovering Chenoweth had written numerous ICS
payroll and vendor checks as payable to herself, which exceeded her regular wages, and
then cashed or deposited those checks into her personal checking account at Busey
Bank.

      6.      Affiant states that on January 26, 2018, Detective Chad Shipley of the
Champaign Police Department was assigned to investigate York's complaint (C18-
00645). York's ICS checking account was opened and maintained by Hickory Point
Bank in May, 2013. Prior to this, York's ICS checking account was maintained by Busey
Bank. Busey Bank records are no longer available to review, this investigation is limited
to May, 2013, or since the inception of the ICS checking account at Hickory Point Bank.
Detective Shipley reviewed ICS Hickory Point Bank statements. Detective Shipley also
reviewed Chenoweth's personal Busey Bank account statements and found evidence in
the statements that corroborate York's allegations. Specifically, that between May 2013
and January 2018, Chenoweth had written and cashed or deposited approximately 231
checks from the ICS account, payable to herself or CASH, which exceeded her regular
wages. This resulted in a loss by the ICS business of approximately $298,142.70.

      7.      Affiant states during the course of this investigation, York discovered
another method Chenoweth utilized to embezzle funds from the business. York
reviewed his ICS checking account statements and discovered Chenoweth had
electronically routed funds from his ICS checking account to make monthly payments
to her personal credit card accounts, AE (American Eagle) VISA and DISCOVER CARD.

Detective Shipley has reviewed Chenoweth's personal credit card statements from AE VISA and DISCOVER CARD (records furnished pursuant to a subpoena). Detective Shipley found evidence in the statements to support York's allegations; that between 2015 and 2018, Chenoweth had electronically routed approximately $308,458.75 from the ICS checking account to make monthly payments to her personal credit card accounts.

8.      Affiant states he was contacted by Detective Shipley in May, 2018, after discovering Chenoweth had violated federal laws, namely; Wire Fraud, Mail Fraud, and Tax Evasion. Affiant states he has reviewed Chenoweth's monthly statements from AE VISA and DISCOVER CARD and discovered records of multiple debits Chenoweth routed through FACEBOOK from her AE VISA accounts (two AE VISA accounts in Chenoweth's name). Affiant found that specifically, between April 5, 2016, and January 25, 2018, Chenoweth routed approximately one hundred and seventy-one (171) debits from her AE VISA credit card accounts to Facebook for total of $36,900.

9.      Affiant states he has viewed the Facebook page of the vanity name Joan Chenoweth, which is open for public viewing. Affiant states he recognized photographs within this page as being Joan Leslie Chenoweth, the target of this investigation. Affiant states he was able to view Joan Chenoweth's User ID, 548243122, within the timeline of her Facebook page.

10.     Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to

4

share written news, photographs, videos, and other information with other Facebook

users, and sometimes with the general public.

      11.     Facebook asks users to provide basic contact and personal identifying

information to Facebook, either during the registration process or thereafter.  This

information may include the user's full name, birth date, gender, contact e-mail

addresses, Facebook passwords, physical address (including city, state, and zip code),

telephone numbers, screen names, websites, and other personal identifiers.  Facebook

also assigns a user identification number to each account.

      12.     Facebook users may join one or more groups or networks to connect and

interact with other users who are members of the same group or network.  Facebook

assigns a group identification number to each group.  A Facebook user can also connect

directly with individual Facebook users by sending each user a "Friend Request."  If the

recipient of a "Friend Request" accepts the request, then the two users will become

"Friends" for purposes of Facebook and can exchange communications or view

information about each other.  Each Facebook user's account includes a list of that

user's "Friends" and a "News Feed," which highlights information about the user's

"Friends," such as profile changes, upcoming events, and birthdays.

      13.     Facebook users can select different levels of privacy for the

communications and information associated with their Facebook accounts.  By

adjusting these privacy settings, a Facebook user can make information available only

to himself or herself, to particular Facebook users, or to anyone with access to the

Internet, including people who are not Facebook users.  A Facebook user can also create

"lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

14.     Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

15.     Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

6

16.     Facebook users can exchange private messages on Facebook with other users.  Those messages are stored by Facebook unless deleted by the user.  Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.  In addition, Facebook has a chat feature that allows users to send and receive instant messages through Facebook Messenger.  These chat communications are stored in the chat history for the account.  Facebook also has Video and Voice Calling features, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

17.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

18.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages.  Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites.  Facebook users can also become "fans" of particular Facebook pages.

19.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

20.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present.  The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding

someone as a friend.  The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

21.     Facebook also has a Marketplace feature, which allows users to post free classified ads.  Users can post items for sale, housing, jobs, and other items on the Marketplace.

22.     In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about the user's access or use of that application may appear on the user's profile page.

23.     Facebook allows users access to another application, Facebook Messenger. Facebook Messenger provides a service allowing a Facebook user to transfer funds (money) to another Facebook user.  This transfer of funds is accomplished when a Facebook user who sends funds and a Facebook user who receives funds both enter credit card or bank account information to or from which funds are to be sent or received.

24.     Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address.  These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action.  For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

8

25.     Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number).  In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

26.     As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time.  Further, Facebook account activity can show how and when the account was accessed or used.

9

For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

27.    Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

**INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

28.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

**CONCLUSION**

29.     Based on the forgoing, I request that the Court issue the proposed search warrant.  Because the warrant will be served on Facebook, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

30.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

31.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

**REQUEST FOR SEALING**

32.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of

the Court. These documents discuss an ongoing criminal investigation that is neither

public nor known to all of the targets of the investigation. Accordingly, there is good

cause to seal these documents because their premature disclosure may seriously

jeopardize that investigation.

Respectfully submitted,

s/JAMES PEACOCK

James Peacock
Special Agent- Internal Revenue Service

Subscribed and sworn to before me on _____ *E* 9 / 17 _____, 2019

s/ERIC I. LONG

HONORABLE ERIC I. LONG
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

**Property to Be Searched**

This warrant applies to information associated with the Facebook user ID
**548243122** that is stored at premises owned, maintained, controlled, or operated by
Facebook Inc., a company headquartered in Menlo Park, California.

**ATTACHMENT B**

**Particular Things to be Seized**

I.    **Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)    All contact and personal identifying information, including user IDs: full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)    All activity logs for the account and all other documents showing the user's posts and other Facebook activities from April 5, 2016 through January 25, 2018;

(c)    All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them from April 5, 2016 through January 25, 2018, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)   All profile information; News Feed information; status updates; videos,

photographs, articles, and other items; Notes; Wall postings; friend lists,

including the friends' Facebook user identification numbers; groups and

networks of which the user is a member, including the groups' Facebook

group identification numbers; future and past event postings; rejected

"Friend" requests; comments; gifts; pokes; tags; and information about the

user's access and use of Facebook applications;

(e)   All records or other information regarding the devices and internet

browsers associated with, or used in connection with, that user ID,

including the hardware model, operating system version, unique device

identifiers, mobile network information, and user agent string;

(f)   All other records and contents of communications and messages made or

received by the user from April 5, 2016 through January 25, 2018,

including all Messenger activity, private messages, chat history, video and

voice calling history, and pending "Friend" requests;

(g)   All records related to transfers of funds through Facebook Messenger by

or to the user from April 5, 2016 through January 25, 2018, including but

not limited to:  the identity of the senders and recipients, dates and times

of transfers, amount, credit card and bank account information for the

senders and recipients, IP addresses and device identifiers associated with

transfers, and any related descriptions or messages pertaining to transfers.

(h)   All "check ins" and other location information;

2

(i)     All IP logs, including all records of the IP addresses that logged into the account;

(j)     All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(k)     All information about the Facebook pages that the account is or was a "fan" of;

(l)     All past and present lists of friends created by the account;

(m)     All records of Facebook searches performed by the account from April 5, 2016 through January 25, 2018;

(n)     All information about the user's access and use of Facebook Marketplace;

(o)     The types of service utilized by the user;

(p)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(q)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(r)     All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

3

Facebook is hereby ordered to disclose the above information to the government within **14 DAYS** of service of this warrant.

II.    **Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Wire Fraud,18 U.S.C. § 1343, Mail Fraud, 18 U.S.C. § 1341, and Tax Evasion, 18 U.S.C. § 7201, involving Joan Chenoweth since April 5, 2016, including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a) Evidence of transfer or laundering of money.

(b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(c) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents,

4

attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the IRS may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.